# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL CASE NO. 1:11cr10

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| JAMES W. "BILL" BAILEY, JR. | ) | |

**THIS MATTER** is before the Court on the Verified Claims filed by David E. Gable, Brian T. McSharry, Douglas W. Morris, Lorri K. Morris, Brian D. Gardze, Carlton Lee Matthews, Sidney S. Locke, Stephen M. Todd, Dirk R. Pieper, Michael J. Mikina, Wendy Hammond, Daniel F. Russian, Bruce H. Keel, Gregory M. McCarthy, Mark A. Brezenski, and Timothy E. Batson ("Petitioners"). [Docs. 23-38].

## I.    PROCEDURAL BACKGROUND

On February 1, 2011, the Defendant was charged with filing false tax returns and with committing securities and mail fraud. The Bill of Information contained a Notice of Forfeiture, which contained information indicating that the Government intended to pursue the forfeiture of various

property, including "[a]ny and all shares or percentile ownership of . . . Sage Automotive." [Doc. 1 at 11]. Following the Defendant's plea of guilty to the Bill of Information on February 16, 2011, the Court entered a Consent Order and Judgment of Forfeiture ("Consent Order"). [Doc. 16].

The Petitioners filed their Verified Claims on March 11, 2011, seeking to adjudicate the validity of their interest in certain certificated securities ("the Certificates") of Sage Automotive Interiors, Inc. ("Sage") that the Defendant had forfeited pursuant to the Consent Order. [Docs. 23-38]. On March 22, 2011, the Petitioners moved for an expedited hearing on their claims.[1] [Doc. 48]. The Court granted the Petitioners' motion and held an expedited hearing on April 5, 2011.

## II. FACTUAL BACKGROUND

The basic underlying facts are not in dispute. In 2008, the entity that was to become Sage was a division of Milliken Corporation ("Milliken"), a

---

[1] The Petitioners requested an expedited resolution of this matter as a sale of Sage to another company is currently pending. The sale is scheduled to close within the next few weeks. As part of this sale, the Petitioners, who are minority shareholders, will be granted the option to purchase stock in the purchasing company, using the proceeds of the sale of their Sage stock, at very advantageous terms. Such terms could further increase the already significantly increased value of the Sage stock. This opportunity, however, will be available only at the closing of the sale and will be lost forever once the sale is final.

2

textile and chemical company headquartered in Spartanburg, South Carolina. When Milliken decided to withdraw from the automotive market and close the division, the management team of the division decided to pursue incorporating and operating as an independent entity. Over a very short period of time, the management team attracted significant venture capital and converted the division into a privately-held company, which became Sage. The managers contributed significant capital from their Milliken retirement accounts and many of the division's employees' retirement accounts.

In order to utilize the retirement account funds, it was necessary to transfer the funds from their existing retirement accounts with Milliken to new, self-directed Individual Retirement Accounts ("IRAs"). The Petitioners made contact with the Defendant and his company, Southern Financial Services, Inc. ("Southern Financial"). The Defendant met with the Petitioners in Greenville, South Carolina and discussed their need for self-directed IRAs. Specifically, he informed them that he was properly licensed and persuaded them that he could set up the appropriate accounts to allow the investment of their Milliken retirement funds in Sage. The Petitioners agreed to have the Defendant set up the appropriate

3

accounts through Southern Financial and executed account agreements with the Defendant.

During September and October of 2009, the Petitioners transferred their retirement funds to Southern Financial, which in turn sent funds to the Smith Moore Leatherwood LLP ("Smith Moore") law firm in Greenville, South Carolina. Smith Moore then issued the Certificates to Southern Financial as custodian for the benefit of the Petitioners' individual IRA accounts. The Certificates were physically held in the offices of Southern Financial by the Defendant. At the time of purchase, the Certificates had a face value of 1.2 million dollars.

Unbeknowst to the Petitioners, the Defendant was not properly licensed to purchase securities and was in fact engaged in massive schemes to defraud his investors. The Defendant deposited all of the money he fraudulently obtained from investors -- regardless of what type of investment the investor had selected -- into Southern Financial's accounts and used these funds as needed to perpetuate his schemes. In the instances of Petitioners Batson, Brezenski, Gable, Hammond, Locke, McSharry, Mikina, D. Morris, and L. Morris, purchases of the Certificates were made with funds collected directly from these Petitioners ("the Clear

Tracing Petitioners"). In the instances of the remaining Petitioners ("the Other Sage Petitioners"), however, purchases of the Certificates were made with funds collected from the Other Sage Petitioners, as well as other defrauded Southern Financial clients and defrauded financial institutions. [See Petitioners' Exhibit 9].[2]

III.   **ANALYSIS**

A third party who asserts an interest in forfeited property may petition the Court for a hearing to adjudicate the validity of that interest. 21 U.S.C. § 853(n)(2). The Court must amend the forfeiture order if the petitioner can show by a preponderance of the evidence that

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section . . . .

---

[2] The summary of bank records submitted by the Petitioners show that the Other Sage Petitioners gave funds to the Defendant, who comingled those funds with the proceeds obtained from other investors. The Defendant then used part of the Other Sage Petitioners' funds to purchase the Certificates, while part of their funds were used for other unauthorized purposes. In the interim, however, the balance of the comingled account fell below the aggregate of the funds invested by the Other Sage Petitioners.

21 U.S.C. § 853(n)(6)(A).³ Thus, in order to prevail on their claims, the Petitioners must show: (1) that they had a legal interest in the forfeited property and (2) that their legal interest was superior to the Defendant's interest in the forfeited property at the time of the Defendant's fraud. See United States v. Shefton, 548 F.3d 1360, 1364 (11th Cir. 2008).

The "legal interest" of a third party in forfeited property is determined by state law. See United States v. Schecter, 251 F.3d 490, 494 (4th Cir. 2001). Once it is determined that a third party has a legal interest, the Court looks to federal law to determine whether such interest is sufficient for the third party to prevail under § 853(n)(6). United States v. Buk, 314 F. App'x 565, 568-69 (4th Cir. 2009).

In this case, the Petitioners contend, and the Court concludes, that the law of South Carolina governs whether the Petitioners have a legal interest in the forfeited property. Under South Carolina law,"[a] constructive trust arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it as where money

---

³A petitioner also may establish that he is a bona fide purchaser for value of the forfeited property, see 21 U.S.C. § 853(n)(6)(B). Because the Court concludes that the Petitioners may prevail under § 853(n)(6)(A), however, the Court need not address whether the Petitioners also qualify as bona fide purchasers for value.

6

has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty." SSI Med. Servs., Inc. v. Cox, 301 S.C. 493, 500, 392 S.E.2d 789, 793-94 (1990). A constructive trust is an equitable remedy used "to vindicate right and justice or frustrate fraud." Whitmire v. Adams, 273 S.C. 453, 457, 257 S.E.2d 160, 163 (1979). It "arises entirely by operation of law without reference to any actual or supposed intentions of creating a trust." SSI Med. Servs., 301 S.C. at 500, 392 S.E.2d at 793. While fraud is an essential element giving rise to a constructive trust, it need not be actual fraud. Lollis v. Lollis, 291 S.C. 525, 529, 354 S.E.2d 559, 561 (1987). In order to establish a constructive trust under South Carolina law, the evidence must be clear and convincing. SSI Med. Servs., 301 S.C. at 500, 392 S.E.2d at 794.

In the present case, it is undisputed that the Defendant obtained money from the Petitioners through fraudulent means. Under South Carolina law, a constructive trust thus arose in those funds at the time that they were conveyed to the Defendant. See SSI Med. Servs., 301 S.C. at 500, 392 S.E.2d at 793-94. As such, the Petitioners have a valid legal interest in these funds pursuant to South Carolina law.

Having determined that the Petitioners have a valid interest in the funds under state law, the Court now turns to federal law to determine whether such interest is sufficient for the Petitioners to prevail under § 853(n)(6). The Government argues that the Petitioners do not have a sufficient interest because a constructive trust is an *equitable* interest rather than *legal*, and thus, Petitioners' claims should fail. The Government's argument, however, is unsupported by precedent. The Fourth Circuit has concluded that a constructive trust constitutes a "legal right, title, or interest" in property under § 853(n)(6)(A) and thus may invalidate a criminal forfeiture order. See Buk, 314 F. App'x at 568; see also Shefton, 548 F.3d at 1365. In order to constitute a "superior" right, however, the beneficiary of a constructive trust must be able to trace his equitable interest to identifiable property held by the wrongdoer. See United States v. Schwimmer, 968 F.2d 1570, 1583 (2d Cir. 1992).

In the present case, the Petitioners have presented evidence to show that the Defendant purchased Certificates on behalf of the Clear Tracing Petitioners (Batson, Brezenski, Gable, Hammond, Locke, McSharry, Mikina, D. Morris, and L. Morris) with funds collected directly from these

Petitioners. [See Petitioners' Exhibit 9].[4] Because these Clear Tracing Petitioners' funds are directly traceable to the Certificates purchased and held by the Defendant, a constructive trust may be imposed on the entirety of the Certificates issued on behalf of these Petitioners. See Schwimmer, supra.

With respect to the remaining Petitioners (the Other Sage Petitioners), however, purchases of the Certificates were made in part with funds obtained from other defrauded Southern Financial clients and defrauded financial institutions. As such, only a portion of the Petitioners' funds can be traced to the purchase of the Certificates. Based on a review of the summary of bank records prepared by the Government and proffered by the Petitioners at the hearing [Petitioners' Exhibit 9], and utilizing the lowest intermediary balance rule, the Court finds as fact the percentage of Petitioners' funds directly traceable to the purchased Certificates as follows:

---

[4] An example to these transactions is that seen regarding Petitioner McSharry. His retirement funds were forwarded to the Defendant on September 3, 2009, and deposited in Southern Financial's account. On September 4, 2009, the Defendant forwarded that amount to Smith Moore, the firm closing on the stock purchase, for the issuance of Petitioner McSharry's shares. In the intervening time, the balance in Southern Financial's account never fell below the $150,000 forwarded by Petitioner McSharry.

Gardze    61.11%

Matthews  89.14%

Todd       6.28%

Pieper    74.19%

Russian   48.10%

Keel      41.74%

McCarthy  37.63%

Accordingly, a constructive trust may be imposed only on that percentage of the Certificates' value which is directly traceable to the funds provided by these Petitioners.

The Government contends that a constructive trust should not be imposed for the benefit of the Petitioners, because such a trust would harm the other numerous victims "who were equally defrauded by Defendant." [Doc. 127 at 14]. The Court does not agree.

The imposition of a constructive trust is an equitable remedy, and the decision to award such equitable relief is a matter within the Court's wide discretion. See United States v. Andrews, 530 F.3d 1232, 1238 (10th Cir. 2008). In exercising this discretion, the Court is mindful that some courts have declined to impose constructive trusts in similar fraud cases,

reasoning that to allow one victim to make a full recovery of his loss from a limited pool of seized assets would harm similarly situated victims, who would recover less than their pro-rata share of the seized assets.  See United States v. Ramunno, 599 F.3d 1269 (11th Cir. 2010); Andrews, 530 F.3d at 1238-39; S.E.C. v. Elliott, 953 F.2d 1560, 1569 (11th Cir. 1992); United States v. Durham, 86 F.3d 70, 73 (5th Cir. 1996).  Under the particular circumstances presented in this case, however, the Court concludes that the principles of fairness and equity justify the imposition of a constructive trust in favor of the Petitioners to the extent that their investments can be traced into the Sage shares.

The Petitioners are in a relatively unique position.  Unlike many other victims who "invested" money with Defendant and received some payouts in return (thereby reducing their total losses), the Petitioners have lost 100% of the funds they provided to the Defendant for the purchase of the Sage Certificates.  Other victims are being allowed to keep the proceeds that the Defendant paid to them, despite the fact that such payouts may be technically forfeitable as proceeds of the Defendant's crimes, because the Government as a practical matter does not intend to pursue forfeiture of these assets.  Unfortunately for the Petitioners, their "payout," i.e., the

Certificates that were issued on their behalf, happened to be in the physical possession of the Defendant at the time that the Government physically seized the Defendant's assets. It is only because of this fortuitous (or rather, unfortuitous) occurrence that the Government now seeks forfeiture of the Certificates. Had the Certificates been delivered to the Petitioners, the Government concedes that it would not have sought the forfeiture of this property. But because the Certificates were in the possession of the Defendant, and thus are, in the words of the Government, "low hanging fruit," forfeiture of this property is being pursued. It is the Government's decision to pursue forfeiture of these Certificates, however, that truly renders the Petitioners victims in this case.

Once the Certificates are released from the Consent Order and Judgment of Forfeiture, they can be sold expeditiously and for fair market value to the company acquiring Sage. For that portion of the Certificates that is directly traceable to the Petitioners' funds, the sale of these Certificates will generate proceeds that the Petitioners can then use to purchase stock in the acquiring company under extremely advantageous terms. As for that portion of the Certificates that is not directly traceable to the Petitioners, the proceeds from the sale of these Certificates will be

12

returned to the Government as forfeiture proceeds and added to the pool from which the Attorney General pays restitution to the Defendant's other victims. Under these circumstances, the release of these Certificates from the Consent Order and Judgment of Forfeiture benefits not only these Petitioners, but the other victims of the Defendant as well.

IV.  **ORDER**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Petitioners' Verified Claims [Docs. 23-38] are **GRANTED**, and the Consent Order and Judgment of Forfeiture entered February 16, 2011 [Doc. 16] is hereby **AMENDED** to reflect the superior rights of the Petitioners in the certificated securities of Sage Automotive Interiors, Inc. that were seized by the Government pursuant to the Consent Order and Judgment of Forfeiture.

**IT IS FURTHER ORDERED** that the seized certificated securities of Sage Automotive Interiors, Inc. shall be returned by the Government to the Petitioners, and the Petitioners are hereby authorized to proceed with the sale of said securities, subject to the further provisions of this Order.

**IT IS FURTHER ORDERED** that Petitioners Timothy E. Batson, Mark A. Brezenski, David E. Gable, Wendy Hammond, Sidney S. Locke, Brian T.

13

McSharry, Michael J. Mikina, Douglas W. Morris, and Lorri K. Morris shall be entitled to retain 100% of the proceeds of the sale of the certificated securities titled in the names of their individual retirement accounts.

**IT IS FURTHER ORDERED** that, upon the sale of certificated securities titled in the name of his individual retirement account, Petitioner Brian D. Gardze shall be entitled to retain 61.11% of the sale proceeds and shall make immediate return to the Government of the remaining 38.89% as forfeiture proceeds.

**IT IS FURTHER ORDERED** that, upon the sale of certificated securities titled in the name of his individual retirement account, Petitioner Bruce H. Keel shall be entitled to retain 41.74% of the sale proceeds and shall make immediate return to the Government of the remaining 58.26% as forfeiture proceeds.

**IT IS FURTHER ORDERED** that, upon the sale of certificated securities titled in the name of his individual retirement account, Petitioner Carlton Lee Matthews shall be entitled to retain 89.14% of the sale proceeds and shall make immediate return to the Government of the remaining 10.86% as forfeiture proceeds.

**IT IS FURTHER ORDERED** that, upon the sale of certificated securities titled in the name of his individual retirement account, Petitioner Gregory M. McCarthy shall be entitled to retain 37.63% of the sale proceeds and shall make immediate return to the Government of the remaining 62.37% as forfeiture proceeds.

**IT IS FURTHER ORDERED** that, upon the sale of certificated securities titled in the name of his individual retirement account, Petitioner Dirk R. Pieper shall be entitled to retain 74.19% of the sale proceeds and shall make immediate return to the Government of the remaining 25.81% as forfeiture proceeds.

**IT IS FURTHER ORDERED** that, upon the sale of certificated securities titled in the name of his individual retirement account, Petitioner Daniel F. Russian shall be entitled to retain 48.10% of the sale proceeds and shall make immediate return to the Government of the remaining 51.90% as forfeiture proceeds.

**IT IS FURTHER ORDERED** that, upon the sale of certificated securities titled in the name of his individual retirement account, Petitioner Stephen M. Todd shall be entitled to retain 6.28% of the sale proceeds and

shall make immediate return to the Government of the remaining 93.72%

as forfeiture proceeds.

**IT IS SO ORDERED**.

Signed: April 7, 2011

Martin Reidinger
United States District Judge