THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:11-cr-00010-MR-DLH

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> JAMES W. "BILL" BAILEY, JR., ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Government's Motion for Summary Judgment [Doc. 330] and the Motion for Summary Judgment filed by Christine Julian-DeBaltzo [Doc. 353] regarding the forfeiture of $22,013.22 being held by 1031 Exchange Services, LLC.

**I.    PROCEDURAL BACKGROUND**

On February 1, 2011, the Defendant James W. "Bill" Bailey was charged in a Bill of Information with filing false tax returns, in violation of 26 U.S.C. § 7206(l); committing mail fraud, in violation of 18 U.S.C. § 1341; and committing securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.  [Doc. 1].  The Bill of Information

contained a Notice of Forfeiture, which stated the Government's intent to pursue the forfeiture of the Defendant's interest in various properties pursuant to 18 U.S.C. § 982 and 28 U.S.C. § 2461(c).  [Id.].

The Defendant entered a plea of guilty to the Bill of Information on February 16, 2011.  [Doc. 15].  Following the Defendant's guilty plea, the Government and the Defendant presented the Court with a proposed Consent Order and Judgment of Forfeiture ("Consent Order"), pursuant to which the Defendant agreed to forfeit, among other things, his interest in funds held in the sole name or joint names of the Defendant, Southern Financial Services of North Carolina, Inc. ("Southern Financial"), 1031 Exchange Services, LLC ("1031 Exchange"), and AVL Properties, LLC ("AVL Properties") in accounts at HomeTrust Bank, Capital Bank, Bank of Asheville, Smith Barney/CitiGroup, and Asheville Savings Bank.  [Doc. 16 at 3].  The Consent Order was entered on February 16, 2011.

On April 11, 2011, the Petitioner Christine Julian-DeBaltzo ("Julian-DeBaltzo") filed an unverified petition, seeking the return of $22,013.22 held by 1031 Exchange and seized by the Government pursuant to the Consent Order.  [Doc. 171].  After receiving notice from the Court [Doc. 173], Julian-DeBaltzo filed an amended, verified petition asserting her claim on April 29, 2011.  [Doc. 186].

The Government filed a Motion for Summary Judgment on Julian-DeBaltzo's claim on February 22, 2012. [Doc. 330]. Julian-DeBaltzo filed a Motion for Summary Judgment on March 26, 2012. [Doc. 353].

## II. STANDARD OF REVIEW

While this ancillary proceeding arises in the context of criminal forfeiture, the Federal Rules of Criminal Procedure allow for a party to move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Crim. P. 32.2(c)(1)(B). Accordingly, in reviewing the parties' summary judgment motions, the Court applies the same standard of review that would be applied in a civil case. United States v. Corpus, 491 F.3d 205, 208-09 (5th Cir. 2007).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate shall be entered.

Id. (internal quotation marks and citations omitted).

In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and must draw all reasonable

4

inferences in the nonmoving party's favor. <u>Adams v. Trustees of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 556 (4th Cir. 2011). Where both parties seek summary judgment, the Court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted).

## III. FACTUAL BACKGROUND

On September 22, 2010, Petitioner Christine Julian-DeBaltzo contracted with 1031 Exchange to act as a qualified intermediary for a tax deferred exchange of real property pursuant to 26 U.S.C. § 1031. [Exchange Agreement, Doc. 334-1]. Pursuant to this agreement, on September 22, 2010, Julian-DeBaltzo mailed $22,013.28 to 1031 Exchange to hold in trust until directed otherwise by her. [Amended Petition, Doc. 186 at ¶5]. On September 28, 2010, 1031 Exchange accepted these funds and deposited them into an account ending in 2366 at Home Trust Bank (the "2366 Account"), along with funds received from Defendant's other clients. [<u>Id.</u>; Bank Records, Doc. 330-6 at 3]. The funds held in the 2366 Account were then disbursed to various other accounts held by the Defendant and his companies. [Bill of Information, Doc. 1; Affidavit of James W. "Bill" Bailey ("Bailey Aff."), Doc. 140]. The Defendant

5

treated all accounts under his control (including the 2366 Account) as one, and used all monies in those accounts interchangeably. [Bailey Aff., Doc. 140].

Julian-DeBaltzo contends that as of December 31, 2010, after all accounts controlled by Defendant were frozen, over $200,000.00 was in accounts controlled by Bailey, including $174,236.65 in the 2366 Account. [Bank Account Information, Doc. 354-4]. The Government has presented evidence to show, however, that the 2366 Account in fact maintained a negative balance after the December 2010 collapse of the Defendant's kiting scheme, and that execution of warrants resulted in the seizure from Defendant's accounts of only $73,200.22, none of which came from the 2366 Account. [See Doc. 361 at 2-3 (citing search warrant returns)]. The Government's evidence makes clear that the 2366 Account's stated balance of $174,236.65 in fact did not exist but rather was a statement of uncleared funds taken illegally from Defendant's SmithBarney account and deposited into the 2366 Account as a result of the Defendant's check kiting scheme. [Doc. 361 at 6].

## IV. ANALYSIS

A third party who asserts an interest in forfeited property may petition the Court for a hearing to adjudicate the validity of that interest. 21 U.S.C.

§ 853(n)(2). The Court must amend the forfeiture order if the petitioner can show by a preponderance of the evidence that

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section . . . .

21 U.S.C. § 853(n)(6)(A).[1] Thus, in order to prevail on her claim, the Petitioner must show: (1) that she had a legal interest in the forfeited property and (2) that her legal interest was either vested or superior to the Defendant's interest in the forfeited property at the time of the commission of the acts which gave rise to the forfeiture. See United States v. Oregon, 671 F.3d 484, 491 (4th Cir. 2012). Although forfeiture is an issue of federal law, courts generally refer to the law of the state that created the property right to determine what interests, if any, the claimant has in the forfeited property. Id. at 490; United States v. Schecter, 251 F.3d 490, 494 (4th Cir. 2001). Once the legal interests have been defined under state law, federal law determines whether such interests are sufficient for the claimants to

---

[1] A petitioner also may establish that she is a bona fide purchaser for value of the forfeited property. See 21 U.S.C. § 853(n)(6)(B). As Julian-DeBaltzo does not contend to be a bona fide purchaser for value, this section is therefore inapplicable here.

prevail under § 853(n)(6). Oregon, 671 F.3d at 491-92; United States v. Buk, 314 F. App'x 565, 568-69 (4th Cir. 2009).

In this case, the Petitioner contends, and the Court concludes, that the law of North Carolina governs whether the Petitioner has a legal interest in the forfeited property. Under North Carolina law, a constructive trust is an equitable remedy imposed by courts "to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Roper v. Edwards, 323 N.C. 461, 464, 373 S.E.2d 423, 424-25 (1988) (citation omitted). A constructive trust "arises purely by construction of equity independently of any contract or of any actual or presumed intention of the parties to create a trust." Hughes v. Craddock, No. COA10-266, 2010 WL 4290228, at *3 (N.C. Ct. App. Nov. 2, 2010) (quoting Teachey v. Gurley, 214 N.C. 288, 292, 199 S.E. 83 (1938)). A finding of actual fraud is not required for the imposition of a constructive trust; "[f]raud need not be shown if legal title has been obtained in violation of some duty owed to the one equitably entitled." Roper, 323 N.C. at 465, 373 S.E.2d at 425. In order to establish a trust under North Carolina law, the evidence must be clear and convincing. Upchurch v. Upchurch, 128

N.C. App. 461, 464, 495 S.E.2d 738, 740, disc. review denied, 348 N.C. 291, 501 S.E.2d 925 (1998).

In the present case, it is undisputed that the Defendant obtained money from the Petitioner through fraudulent means. Under North Carolina law then, a constructive trust thus arose in those funds at the time that they were conveyed to the Defendant. As such, the Petitioner had a valid legal interest in those funds pursuant to North Carolina law.

Having determined that the Petitioner has a valid interest in the funds under state law, the Court now turns to federal law to determine whether such interest is sufficient for the Petitioner to prevail under § 853(n)(6)(A). The Fourth Circuit has concluded that a constructive trust constitutes a "legal right, title, or interest" in property under § 853(n)(6)(A) and thus may invalidate a criminal forfeiture order. See Buk, 314 F. App'x at 568; see also United States v. Shefton, 548 F.3d 1360, 1365 (11th Cir. 2008). In order to constitute a "superior" right, however, the beneficiary of a constructive trust must be able to trace her equitable interest to identifiable property held by the wrongdoer. See United States v. Schwimmer, 968 F.2d 1570, 1583 (2d Cir. 1992).

Here, the Petitioner has not presented any evidence from which the Court could trace her equitable interest into the remaining funds held by the

9

Defendant. Indeed, such tracing would be impossible, as the funds deposited by the Petitioner lost their separate identity when the Defendant, acting in a manner inconsistent with Petitioner's instructions, used the funds for his own purposes. In that sense, the Petitioner's situation is identical to that of the Defendant's numerous other victims who transferred monies to him for the purpose of establishing investment management accounts (IMAs) and asset management accounts (AMAs). In both cases, the Defendant retained the clients' funds in his own accounts and used the funds for whatever purpose he in his sole discretion deemed appropriate. Unfortunately, by the time that the Defendant's fraudulent scheme was discovered, little remained of these funds.

Even if the Petitioner could trace her equitable interest to any identifiable property held by the Defendant, however, the Court still would decline to impose a constructive trust under the particular circumstances of this case. The imposition of a constructive trust is an equitable remedy, and the decision to award such equitable relief is a matter within the Court's wide discretion. See United States v. Andrews, 530 F.3d 1232, 1238 (10th Cir. 2008). In exercising this discretion, the Court is mindful that other courts have declined to impose constructive trusts in similar fraud cases, reasoning that to allow one victim to make a full recovery of his loss

from a limited pool of seized assets would harm similarly situated victims, who would recover less than their pro-rata share of the seized assets.

Under the particular circumstances presented in this case, the Court concludes that the principles of fairness and equity do not justify the imposition of a constructive trust in favor of the Petitioner. Julian-DeBaltzo's situation is entirely distinguishable from that of the Sage Petitioners, for whom the Court previously imposed a constructive trust. In the case of the Sage Petitioners, the Court concluded that their investments could be traced directly to identifiable assets (in that case, stock certificates) that the Defendant had purchased on their behalf.[2] [See Docs. 163, 306, 331]. Petitioner Julian-DeBaltzo, however, cannot identify any asset purchased by the Defendant on her behalf. Instead, she entrusted her funds to the Defendant with the expectation that he would retain those funds for her. Unfortunately, the Defendant ignored the Petitioner's directives, and her funds were dissipated along with millions of dollars obtained from other victims of the Defendant's fraud.

---

2 In that respect, Petitioner Julian-DeBaltzo's situation is also distinguishable from that of the IRA Petitioners, who provided the Defendant with funds for the purchase of identifiable real estate assets which were in fact subsequently purchased by the Defendant as directed. [See Order, Doc. 598].

11

The Government ultimately seized a total of $73,200.22 in funds from the bank accounts identified in the Consent Order. Such funds are clearly insufficient to satisfy all of the Defendant's victims, who suffered millions of dollars in losses as a result of his fraudulent schemes. As there are clearly not enough assets available to satisfy all of Defendant's victims, imposing a constructive trust on these limited remaining funds in favor of the Petitioner would unfairly elevate her claim above the claims of the other victims who very similarly entrusted money to the Defendant. Numerous federal appeals courts have explicitly discouraged the use of constructive trusts where doing so would give one victim priority over other similarly situated victims. See, e.g., United States v. Wilson, 659 F.3d 947, 956 (9th Cir. 2011) ("[U]nder our precedent, courts generally will not indulge in tracing when doing so would allow one fraud victim to recover all of his losses at the expense of other victims."); United States v. Ramunno, 599 F.3d 1269, 1275 (11th Cir. 2010) ("[W]e agree that equity demands that no victim be given priority over any other similarly situated victim. Fairness does not call for a constructive trust in this case even if Martin can prove that he can trace, because it would elevate his position over that of similarly situated victims.") (citations omitted); Andrews, 530 F.3d at 1238 ("The rationale for imposing a constructive trust in favor of one creditor may not, however,

apply when the competing creditors were also 'involuntary' creditors . . . . [A] court should not employ an equitable fiction 'to elevate [one] claim over the claims of other creditors if those creditors are similarly situated.'") (citation omitted).

For these reasons, the Court in the exercise of its discretion declines to impose a constructive trust in favor of Petitioner Julian-DeBaltzo.

## V. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Motion for Summary Judgment filed by Christine Julian-DeBaltzo regarding the forfeiture of $22,013.22 being held by 1031 Exchange, LLC [Doc. 353] is **DENIED**; the Government's Motion for Summary Judgment [Doc. 330] is **GRANTED**; and Petitioner Julian-DeBaltzo's Petition [Doc. 171], as amended [Doc. 186], is **DISMISSED**.

**IT IS SO ORDERED.**

Signed: February 25, 2013

Martin Reidinger
United States District Judge