THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:11-cr-00010-MR

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| JAMES W. "BILL" BAILEY, JR., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Second Motion for Compassionate Release [Doc. 803] and the Government's Motion to Seal [Doc. 813].

**I.  BACKGROUND**

Starting in 2000, the Defendant James W. Bailey, Jr. engaged in a Ponzi–style fraud scheme that lasted over a decade and bilked well over 100 investors of more than $17 million. [Doc. 600: PSR at 6]. When the scheme started to unravel in 2009, the Defendant engaged in a check kiting scheme that cost HomeTrust Bank approximately $5 million. [Id. at 8]. Throughout the scheme, the Defendant comingled clients' funds and diverted millions of dollars to himself. [Id. at 7, 10]. He also defrauded the United States by

filing false tax returns that failed to report income derived from the scheme. [Id. at 8, 10].

Many of the Defendant's victims were left destitute as a result of the Defendant's scheme. Retirees found themselves seeking employment, losing their homes, and dramatically reducing their standards of living. Some suffered physical and/or mental health problems due to the stresses imposed upon them by the Defendant's fraud. [See id. at 24-50].

In 2011, the Defendant pled guilty to a three-count Bill of Information pursuant to a Plea Agreement. [Docs. 1, 3, 15]. In February 2013, the Court imposed an above–guideline sentence totaling 384 months' imprisonment. [Doc. 609]. The Court later ordered the Defendant to pay over $15 million in restitution. [Doc. 634]. To date, the Defendant has paid less than $200,000 toward his restitution obligation and continues to owe more than $15 million.

The Defendant filed his first compassionate release motion in 2020. [Doc. 800]. As grounds, the Defendant raised many of the same arguments that he makes in the present motion: his concerns about COVID-19, his distrust of BOP's ability to provide him with adequate care, his age and health conditions (including high blood pressure, high cholesterol, and atrial fibrillation), the absence of disciplinary infractions, his efforts at rehabilitation,

and the merits of his release plan. [Doc. 800 at 3-5]. The Court denied the Defendant's motion. [Doc. 802].

The Court received the Defendant's second motion for compassionate release on November 21, 2023. [Doc. 803]. In addition to the health concerns he cited in his earlier motion, the Defendant asserts that he is now 75 years old and has served more than 10 years of his sentence, and that he wishes to provide care for his aging wife. [Id. at 5-7]. He also claims that his physical condition is seriously deteriorating, and that his health is "spinning out of control." [Id. at 3].

The Defendant currently resides at FCI Butner Low, and his projected release date is January 19, 2039.[1]

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

---

[1] https://www.bop.gov/inmateloc/ (last accessed Feb. 7, 2024).

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Defendant asserts that he has exhausted his administrative rights with the BOP. [Doc. 803-1]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 effective November 1, 2023, to address the amendment to § 3582(c)(1)(A) authorizing courts to grant a motion for a sentence reduction based on a defendant's own motion. The amended policy statement also sets forth a list of specified extraordinary and compelling

4

reasons, considered either singly or in combination, that can warrant a reduction in sentence.

As is pertinent here, § 1B1.13(b)(2) advises that extraordinary and compelling reasons may exist if a defendant "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Here, the Defendant satisfies the first and third prongs, but not the second. While the Defendant claims that his "physical health is spinning out of control" [Doc. 803 at 2-3], a careful review of the Defendant's medical records indicate that his long-standing medical issues are being well addressed by BOP medical staff. The Defendant has congestive heart failure (CHF), atrial fibrillation, hyperlipidemia (high cholesterol), and benign essential hypertension (high blood pressure), along with other, less serious conditions common for his age (obesity, ankle pain, and some hearing loss). [See Doc. 812 at 5]. The Defendant had most of these conditions when he was sentenced in 2013. [See Doc. 600: PSR at 15]. The Defendant's prison medical records demonstrate that he is receiving appropriate care for these conditions and that they do not diminish his ability to provide self-care. [See Doc. 812]. In

5

Case 1:11-cr-00010-MR-WCM    Document 814    Filed 02/13/24    Page 5 of 14

September 2023, he was fitted with a pacemaker, and he "[h]as been great since then." [Id. at 7]. He is taking his required medications and is not experiencing dizziness, weakness, or any complications due to the implantation of the pacemaker. [Id.]. In short, the Defendant's chronic conditions are well addressed and stable, and the installation of the pacemaker has improved his heart function. The Defendant therefore has not demonstrated that he meets the criteria set forth in the United States Sentencing Guidelines for compassionate release based on a serious deterioration of his physical health.

The Guidelines also state that extraordinary and compelling reasons may be found where a defendant's medical conditions "substantially diminish the ability of the defendant to provide self-care" within the prison environment. U.S.S.G. § 1B1.13(b)(1)(B). Here, the Defendant reports that he is very active in the prison setting. He has completed 46 courses while in prison (12 of which he instructed) and obtained a Master's Degree. [Doc. 803 at 10]. Throughout 2023, the Defendant worked as a tutor and in the electric shop. [Doc. 811-1; see also Doc. 803 at 12]. The Defendant has not presented any evidence to suggest that his ability to provide self-care is substantially diminished by his medical conditions.

6

Citing U.S.S.G. § 1B1.13(b)(1)(C), the Defendant also argues that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." [Doc. 803 at 7-9]. Specifically, he complains that he has not received proper follow-up care following his pacemaker implantation. [Id.]. The Defendant's medical records, however, demonstrate otherwise. BOP sent him to the hospital for the implantation of a pacemaker on September 29, 2023. [Doc. 812 at 22-25]. They then sent him to the cardiologist for a follow–up visit to have the "pacemaker parameters adjusted" on November 27, 2023. [Id. at 17-18]. His medications were evaluated and adjusted on December 12, 2023. [Id. at 15-16]. The Defendant then had a comprehensive medical visit on December 15, 2023 (during which it was noted that he has been doing "great" since the procedure). [Id. at 4-14]. Nothing in the record indicates that the Defendant requires long–term or specialized care, or that the BOP medical staff is unable to satisfy his medical needs.

The Defendant further contends that he has faced "difficult conditions . . . due to COVID-19." [Doc. 803 at 2]. The mere existence of COVID-19, however, does not present an extraordinary and compelling reason for

7

release.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID–19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").  Although the Defendant's heart conditions are recognized COVID-related risk factors, the Defendant was fully vaccinated against the disease in 2021 and was offered a booster in December 2023, but refused it.  [Doc. 812-2].  According to the CDC, vaccine effectiveness studies indicate that the mRNA COVID–19 vaccines can substantially reduce the risk of COVID-19—including severe illness, hospitalization, and death—among people who are fully vaccinated, even those with co–morbidities.[2]  The Defendant therefore cannot meet his burden of proving that his medical conditions are extraordinary and compelling because his risk associated with COVID-19 is now very low (and could be lower if he accepted the booster), and his medical conditions do not warrant relief absent that risk.  See United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("a defendant's incarceration during the COVID–19

---

[2]  See  https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html) (last accessed Feb. 7, 2024).

8

Case 1:11-cr-00010-MR-WCM   Document 814   Filed 02/13/24   Page 8 of 14

pandemic—when the defendant has access to the COVID–19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction. . . . After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. . . . [T]o the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID–19.").

The Defendant also seeks compassionate release to provide care for his wife, arguing that she has degenerative scoliosis that affects her mobility. [Doc. 803 at 6]. Guideline § 1B1.13(b)(3)(B) permits the Court to find extraordinary and compelling reasons for release if his spouse is "incapacitated" and the Defendant would be the "only available caregiver" for her. The Defendant has not satisfied either element here. According to the Defendant, his wife works from home and two of her children reside approximately an hour away. While Mrs. Bailey may benefit from some assistance, she is not incapacitated and is still able to be employed. Moreover, she has children who live relatively nearby who could potentially assist her. The Defendant has not met his burden of demonstrating that his wife is incapacitated and that the Defendant is only caregiver available.

9

Accordingly, the Court finds that these circumstances do not constitute extraordinary and compelling reasons justifying his early release.

For all these reasons, the Court concludes that the Defendant's proffered reasons, considered either singly or in combination, fail to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i).

Even if the Defendant could establish an extraordinary and compelling reason for his release, the Court would still deny the Defendant's motion. Under the applicable policy statement, the Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As the Court previously explained in denying the Defendant's first motion for compassionate release [Doc. 802], it appears that the Defendant would continue to pose a danger to public safety if released.

Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). During his time in prison, the Defendant has completed a significant number of educational programs, including completing a Master's Degree in Theology, and he has maintained

10

continuous employment. [See Doc. 803: Exhibits]. He also has presented a comprehensive release plan, and he appears to have the support of a number of relatives and members of the community, who have submitted letters in support of his request. [Doc. 803 at 17-19; see, e.g. Doc. 806]. The Defendant, however, has made minimal payments toward his restitution obligation. Further, while the Defendant's efforts at rehabilitation are commendable, such efforts do not outweigh the utter devastation that the Defendant caused with his decade-long Ponzi scheme. The Defendant wiped out many of his clients' life savings, leaving them destitute. A number of those victims have submitted letters to the Court opposing any sentence reduction for the Defendant. [See Doc. 811-3]. As such, the seriousness of the Defendant's offense, the nature and circumstances of the offense, even in light of the Defendant's rehabilitative efforts, warrant the full extent of the sentence the Defendant received.

Moreover, the Defendant's relatively weak arguments regarding whether he has presented "extraordinary and compelling reasons" for release, taken with the severity of his wrongdoing, demonstrate a disregard or lack of awareness of how serious his crimes were. Therefore, a reduction would undermine respect for the law.

11

In like manner, deterrence (both specific and general) also advise against any reduction. A reduction would potentially expose the public to further such crimes by the Defendant, considering his apparent lack of appreciation for the seriousness of his offenses and the reasons why he is imprisoned. The Defendant's full sentence needs to remain in place as a cautionary tale for any who may contemplate following in his footsteps.

For all these reasons, the Court concludes that consideration of the § 3553(a) factors continue to weigh in favor of the full sentence imposed. Accordingly, the Defendant's motion for a sentence reduction is denied.

## B. Motion to Seal

The Government moves the Court for leave to file under permanent seal the BOP medical records [Doc. 812] filed in support of its Response to the Defendant's Motion for Compassionate Release. For grounds, counsel states that the medical records contain highly personal and confidential material concerning the Defendant's medical conditions. [Doc. 813].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting

its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion. The Government filed its motion on February 5, 2024, and such motion has been accessible to the public through the Court's electronic case filing system since that time. Further, the Government has demonstrated that the subject medical records contain sensitive information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

**IT IS, THEREFORE, ORDERED** that the Defendant's Second Motion for Compassionate Release [Doc. 803] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal Exhibit [Doc. 813] is **GRANTED**, and the medical records submitted in

support of the Government's Response [Doc. 812] shall be sealed and shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: February 13, 2024

Martin Reidinger
Chief United States District Judge